**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1710
_____

UBER DRIVER PARTNER EMERY,
                                        Appellant

v.

UBER TECHNOLOGIES INC, AND ITS SUBSIDARIES;
RAISER LLC, A SUBSIDARY OF UBER TECHNOLOGIES INC.;
UBER RIDER DINELY, A RIDER ON UBER TRIP
ID#0D6A11CC-8797-42A1-A61A-B4C33625D04A
(RIDER SCREEN NAME DINELY, 1/11/20 11:03 PM);
UBER RIDER TAJI, BLACK SKIN COLOR FEMALES,
RIDERS ON UBER TRIP ID#9D9C9201-08AD-4370-ACC8-452AB30DEE93
(RIDER SCREEN NAME: TAJI, 01/20/20 1:35 AM);
UBER RIDER JAMES, PICKED UP IN BELMAR AREA OF THE JERSEY SHORE;
UBER'S INVESTIGATION TEAM AND MANAGERS THEREOF, IN PERSONAL
OR OFFICIAL CAPACITY WITH UBER;
UBER'S CRITICAL SAFETY RESPONSE TEAM AND MANAGERS THEREOF;
UBER DRIVER SUPPORT TEAM AND MANAGERS THEREOF;
DARA KHOSROWSHAHI, UBER'S CEO; UBER'S SENIOR MANAGEMENT, IN
PERSONAL OR OFFICIAL CAPACITY WITH UBER
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-20-cv-05156)
District Judge: Honorable Freda L. Wolfson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 24, 2022
Before: MCKEE, SHWARTZ and MATEY, Circuit Judges

(Opinion filed: April 22, 2022)

_____

OPINION[*]

_____

PER CURIAM

Appellant Uber Driver Partner Emery ("Emery")[1] appeals the District Court's order dismissing his claims. For the following reasons, we will affirm.

Emery filed a complaint against Uber Technologies, Inc., a rideshare services company, and its subsidiary,[2] Raiser LLC (collectively "Uber"), alleging claims for sexual harassment and hostile work environment. The claims stem from incidents which allegedly occurred during three "trips" Emery made while working as an Uber driver. The complaint also named as defendants Uber's investigations, critical safety response, and driver support teams and their managers, Uber's CEO Dara Khosrowshahi and Senior Management, and three Uber riders (collectively "Individual Defendants"). In the operative amended complaint, Emery alleged violations of his civil rights under 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. § 10.5-12(1), as well as contract and tort claims.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Appellant proceeded in the District Court under the pseudonym "Emery" without permission of the Court as required under Fed. R. Civ. P. 10(a). In light of its disposition, the District Court noted but did not address the issue. We do the same.

[2] Throughout the proceedings, "Subsidiary" and "Subsidiaries" are misspelled in the caption.

2

The District Court granted the Uber defendants' motion to dismiss the complaint on all counts pursuant to Fed. R. Civ. P. 12(b)(6). See ECF No. 37. It dismissed the complaint without prejudice as to the three riders pursuant to Fed. R. Civ. P. 4(m) for failure to serve, and with prejudice as to all other defendants. Emery has appealed.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.[3] We exercise plenary review over a dismissal pursuant to Fed. R. Civ. P. 12(b)(6), see Spruill v. Gillis, 372 F.3d 218, 226 (3d Cir. 2004), and ask whether the complaint contained "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Emery began working as an independent contractor for Uber pursuant to a Technology Services Agreement (TSA) signed in 2015. He used Uber's smartphone application, the Uber App, to connect with users ("riders") requesting transportation services. As the District Court noted, Emery, who is black, alleged that, sometime in 2017, "Uber Rider/Customer/User James" ("Rider James") repeatedly "made racially-tinged remarks about Emery's genitals while proposing that they have sex." ECF No. 37 at 12. Emery did not report the incident to Uber. Next, on January 11, 2020, "Uber

---

[3] Although the Uber riders were dismissed without prejudice for failure to serve pursuant to Rule 4(m), parties who have not been served are not parties within the meaning of Fed. R. Civ. P. 54(b). See United States v. Studivant, 529 F.2d 673, 674 n.2 (3d Cir. 1976); Gomez v. Gov't of the V.I., 882 F.2d 733, 735-36 (3d Cir. 1989). Accordingly, Emery appeals from a final, appealable order. Emery also appeals the District Court's prior order vacating an entry of default against all Individual Defendants. See ECF No. 28. For the reasons outlined by the District Court, it properly exercised its discretion to vacate the order. See Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 419-20 (3d Cir. 1987) (discussing factors to consider when reviewing a district court's decision to vacate a default judgment).

3

Rider/Customer/User Dinely" ("Rider Dinely") allegedly demanded that Emery make a few stops prior to arriving at her destination.  When he declined, Dinely stated that she "very often" asked "black Uber drivers' to take her places and they would just comply without asking her any questions."  ECF No. 8 at ¶ 142.  Using the Uber App, Emery reported Dinely to Uber as "rude."  Id. at ¶ 159.  Shortly thereafter, Emery's account was placed on hold, pending an investigation of a rider complaint.  When contacted by a member of Uber's investigation team, Emery reiterated that Dinely was "rude."  Id. at ¶¶ 165-66.  Within hours of that call, his account was reactivated.  Finally, on January 20, 2020, "Uber Riders/Customers/Users Taji and her friend" ("Rider Taji and her friend") allegedly made sexual demands and race-specific remarks about Emery's genitals, and insulted him "with many more sexual and cuss words."  Id. at ¶¶ 184-85, 196.  Emery reported the incident to Uber, which indicated that it would investigate.  Two days later, Uber deactivated Emery's Uber account, allegedly for "inappropriate behavior/conduct."  Id. at ¶ 202.

Based on these three interactions with riders, Emery alleged three violations under § 1981, including claims for disparate treatment, hostile work environment, and retaliation.[4]  See generally Brown v. J. Kaz, Inc., 581 F.3d 175, 181 (3d Cir. 2009) (holding that an independent contractor may bring discrimination claims under § 1981 against her employer).  To survive a motion to dismiss on these claims, Emery had to allege "enough facts to raise a reasonable expectation that discovery w[ould] reveal

---

[4] The District Court gleaned seven counts from Emery's 442-paragraph amended complaint.  Emery does not dispute the District Court's construction of his claims.

evidence of the necessary element[s]." Connelly v. Lane Const. Corp, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotation marks omitted).

In claiming that Uber subjected him to disparate treatment based on his race, Emery alleged that Uber did not deactivate the accounts of "white citizens" who refused to submit to riders' race-based sexual advances. ECF No. at ¶238. We agree with the District Court that Emery failed to allege facts to support his conclusory allegations. In particular, the complaint is devoid of facts from which the District Court could infer that Uber deactivated his account because of his race. See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020) (recognizing that, to prevail on a § 1981 claim, a plaintiff must "initially plead . . . that, but for race, [he] would not have suffered the loss of a legally protected right"). To the extent that Emery attempted to raise an inference of discrimination based on disparate treatment with "white citizens," he failed to allege facts to suggest that he was treated differently than similarly situated Uber drivers who were not in a protected class. See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999).

Emery next claimed that Uber created a hostile work environment by failing to respond to his complaints about the Defendant-riders. Even construing the complaint liberally, as the District Court did, to allege that the riders' remarks were motivated substantially by Emery's race, we agree that the claim fails. See ECF No. 37 at 10 fn.7. An employer may be liable for a hostile work environment created by a third-party's conduct "of which [it] knew or should reasonably should have known." Beckford v. Dep't of Corrs., 605 F.3d 951, 957-58 (11th Cir. 2010) (noting that "it makes no

5

difference whether the person whose acts are complained of is an employee, an independent contractor, or for that matter a customer" (citation omitted)). Emery did not report Rider James' conduct to Uber, and he alleged only that he reported Rider Diner as "rude."[5] As a result, Uber was not on notice of any prior racially discriminatory conduct when Emery reported the incident with Rider Taji and her friend; therefore, it could not be liable for failing to take remedial action. See Hales v. Casey's Mktg. Co., 886 F.3d 730, 735 (8th Cir. 2018) (recognizing that "[a]n employer's liability turns on whether [it] was aware of the conduct and whether it took appropriate action to remedy the circumstances in a timely and appropriate manner").

Emery's claim that Uber retaliated against him for reporting riders after "reject[ing] [their] improper Demands/Requests and sexual fantasies/advances/schemes" similarly fails because he does not allege that he complained to Uber that the riders' remarks were race-based. See Castleberry v. STI Grp., 863 F.3d 259, 267 (3d Cir. 2017) (noting that "[i]n a retaliation case a plaintiff must demonstrate that there had been an underlying § 1981 violation"). Rather than racial harassment, his pleadings suggest that he complained of the riders' "sexual harassment." See ECF No. 25-15; Pro Se Brief at 12-15. Because Emery's state law discrimination claims under NJLAD parallel his § 1981 claims, they were also subject to dismissal. See Aman v. Cort Furniture Rental

---

[5] Emery argues that the District Court wrongly assumed that he only reported Rider Dinely as "rude," and that it overlooked "several in-depth conversations" he had with Uber about Rider Diner's conduct. Pro se Br. at 6-12. But he points to evidence he presented in a post-judgment motion, the denial of which he did not appeal. Moreover, Emery does not allege that he specifically complained to Uber about any racially offensive behavior by Rider Dinely.

Corp., 85 F.3d 1074, 1087-88 (3d Cir. 1996) (recognizing that New Jersey "adopted the [United States] Supreme Court's analysis of unlawful discrimination claims brought under Title VII"); see also Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999) (recognizing that "the elements of employment discrimination under Title VII are identical to the elements of a section 1981 claim"). And because there were no viable claims under the NJLAD against Uber, the subsidiary claims for aiding and abetting failed as a matter of law. See Cicchetti v. Morris Cty. Sheriff's Office, 947 A.2d 626, 645 (N.J. 2008).

Emery does not meaningfully challenge the dismissal of his contract and tort claims (Counts IV-VII in the District Court). See Geness v. Cox, 902 F.3d 344, 355 (3d Cir. 2018) ("It is well settled that a passing reference to an issue will not suffice to bring that issue before this court." (internal quotation marks omitted)). In any event, we would affirm their dismissal for the reasons provided by the District Court. And we need not address his argument that the District Court abused its discretion in dismissing the claims against the Uber riders for failure to serve process where it is clear that the complaint failed to state a claim for relief against them. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999) (noting that we may affirm on any grounds supported by the record). Finally, we agree with the District Court that Emery had the opportunity to address the pleading deficiencies in his amended complaint, and that any further amendment would be futile. See Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) (explaining that "[a]mendment of the complaint is futile if the

7

amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss").

Based on the foregoing, we will affirm the District Court's judgment.